IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LARRY JOE KENNEDY, *et al.*,<br><br>Defendants. | Case No. 3:23-cr-00006-SLG-KFR |

**REPORT AND RECOMMENDATION RE MOTION TO SUPPRESS
AND ORDER RE MOTION FOR JOINDER**

Before the Court is a Motion to Suppress filed by Defendant Larry Joe Kennedy.[1] The Motion to Suppress contains a request for an evidentiary hearing "to develop the factual record."[2] The government filed an opposition to the Motion,[3] to which Defendant Kennedy replied.[4] After the briefing was complete, Defendant Erica Elisoff filed an untimely Motion for Joinder.[5]

The Court first **GRANTS in part and DENIES in part** Defendant Elisoff's Motion for Joinder; Defendant Elisoff has standing to join Defendant Kennedy's arguments concerning the searches of 3209 Turnagain Street, Apartments 3 and 4, but not the arguments concerning the search of 151 A Street Loop #7. The Court next **DENIES** Defendants' request for an evidentiary hearing, as Defendants raise no factual disputes in the Motion to Suppress.[6] Finally, the Court recommends that the Motion to Suppress be **DENIED** because

---

[1] Docket 98.
[2] *Id.* at 7.
[3] Docket 101.
[4] Docket 104.
[5] Docket 105; *see also* Docket 93; Docket 97. Defendant Elisoff provides no reason for filing the Motion for Joinder over a month after the dispositive motions deadline and after Defendant Kennedy filed the Motion to Suppress. *See* L. Civ. R. 7.3(j).
[6] *See United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to

the law enforcement affidavits supporting the contested search warrants established probable cause that drug trafficking evidence would be found at the target locations.

I. BACKGROUND

In July 2021, the Federal Bureau of Investigation ("FBI") began an investigation into suspected drug trafficking by Defendants.[7] The investigation began with information from a confidential human source ("CHS-1") that Defendants were distributing crack cocaine in the Anchorage area.[8] The investigation led law enforcement to determine that Defendants were "cooperating with one another and [were] part of the same distribution network," operating from three locations in Anchorage: (1) 3209 Turnagain Street, Apartment 3 ("Subject Apartment 3"); (2) 3209 Turnagain Street, Apartment 4 ("Subject Apartment 4"); and (3) 151 A Street Loop #7 ("Subject Business") (collectively, "Subject Locations").[9]

In May 2022, law enforcement applied for federal warrants to search the Subject Locations for evidence of drug trafficking.[10] The warrant applications were supported by affidavits from FBI Task Force Officer ("TFO") Seth McMillan, a police officer with experience investigating drug trafficking.[11] In his affidavits, TFO McMillan described certain tendencies of and methods typically used by drug traffickers, in his experience.[12] Among the tendencies and methods described by TFO McMillan were that drug trafficking "is frequently a continuing activity over months and years[,]" that drug traffickers keep records of their illegal activities "for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances[,]" that these records are frequently maintained

---

suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citations omitted)).

[7] Docket 98-1 at 18, ¶ 22.
[8] *Id.*
[9] *Id.* at 24, ¶ 31.
[10] *Id.* at 1. There were two search warrant applications for these three locations: one for the two Subject Apartments, and the other for the Subject Business. *See In re Search of 151 A Street Loop #7 Anchorage, Alaska 99518*, No. 3:22-mj-00154-MMS-1, Docket 1. Each application contains an affidavit from TFO McMillan; the two affidavits are virtually identical and appear to differ only with respect to the terms used to refer to the target locations.
[11] Docket 98-1 at 9–11, ¶¶ 2–3.
[12] *Id.* at 11–18, ¶¶ 3–19.

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
2

in a trafficker's residence, and that "it is common for drug trafficking organizations involved in the distribution of controlled substances to maintain equipment and supplies . . . on hand over a lengthy period[.]"[13]

TFO McMillan also provided the following case-specific information to substantiate his belief that there was probable cause for the requested searches:

> 25. The investigation to date has identified KENNEDY and ELISOFF as being in a domestic relationship and living at both [sic] 3209 Turnagain in both SUBJECT APARTMENT 3 and SUBJECT APARTMENT 4; KENNEDY having access to [SUBJECT BUSINESS] . . . .
>
> 26. In substantiating the aforementioned relationships, an Anchorage Police Department (APD) records, Alaska Corrections Offender Management System (ACOMS), and Alaska Public Safety Information Network (APSIN) check showed the following: ELISOFF claims SUBJECT APARTMENT 4 in APSIN for her Alaska ID; KENNEDY claims SUBJECT APARTMENT 4 in APSIN for his Alaska ID; in three incidents involving APD since 2015, KENNEDY has claimed his residence twice as SUBJECT APARTMENT 3, and once as SUBJECT APARTMENT 4; ELISOFF is coregistered with another individual on [a 1990 Cadillac Deville], using SUBJECT APARTMENT 4, but surveillance has only observed KENNEDY operating the vehicle; KENNEDY and ELISOFF are co-registered on a 2003 GMC Yukon . . . using SUBJECT APARTMENT 4 . . . ; KENNEDY AND ELISOFF are co-registered on a 2000 GMC Sierra pickup . . . using SUBJECT APARTMENT 3 . . . ; in 2019 ELISOFF listed KENNEDY as a "significant other" while incarcerated (ACOMS); in April 2019, APO patrol officers responded to an assault report involving KENNEDY and ELISOFF, and they were determined to be in a domestic relationship residing in SUJBECT APARTMENT 3 . . . ; in July 2013, APO patrol officers conducted a felony drug investigation where KENNEDY called ELISOFF his "girlfriend" . . . . KENNEDY's association with [SUBJECT BUSINESS] has been established by conducting a narcotics transaction with CHS-1 on August 31, 2021, at [SUBJECT BUSINESS], prior to and during which KENNEDY's actions demonstrated standing and authority at [SUBJECT BUSINESS], by his own statements included below in this affidavit, and including access to the office area, knowledge, and control of surveillance cameras inside the business and having his child present during the deal.
>
> . . .
>
> 28. On August 26, 2021, CHS-1 was utilized to purchase approximately 7 grams of crack cocaine from KENNEDY in Anchorage, Alaska. CHS-1 arranged to purchase 7 grams for $450 in a phone call that was monitored, and audio recorded by law enforcement that immediately preceded the deal, where KENNEDY told CHS-1 to come to his residence when CHS-1 asked to "come see you" for "the same thing I always get". CHS-1 has been to SUBJECT APARTMENT 3 in the past and did not require a specific address to be given. The deal occurred in the kitchen area of SUBJECT APARTMENT 3 and was monitored and audio recorded by law enforcement.

---

[13] *Id.* at 98-1 at 4-6, ¶¶ 4-6, 11.

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR

3

Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 3 of 14

CHS-1 asked KENNEDY during the deal about getting a discount if CHS-1 were to purchase "14", and KENNEDY said that the price would be "9", indicating based on my training and experience to mean $900 for 14 grams of crack cocaine. KENNEDY could be heard discussing "pandemic" prices, implying that he was charging different prices during the COVID pandemic, which started in early 2020. KENNEDY said that during the pandemic, "14 was 14". . . . Surveillance after the deal observed KENNEDY drive . . . to [SUBJECT BUSINESS] and enter the shop afterwards without knocking or requiring admittance from anyone inside. The suspected crack cocaine was seized by TFO MCMILLAN from CHS-1 immediately after the deal and weighed at approximately 7.1 grams with original cellophane packaging, and field tested presumptively positive for cocaine.

29. On August 31, 2021, CHS-1 was utilized to purchase approximately 14 grams of crack cocaine from KENNEDY in Anchorage, Alaska. This occurred as two separate purchases of approximately 7 grams of crack cocaine each time. Both purchases and phone contact between CHS-1 and KENNEDY were audio recorded by law enforcement. The first deal occurred at [SUBJECT BUSINESS], where, during a first phone call, KENNEDY directed CHS-1 by address and referred to [SUBJECT BUSINESS] as "my shop". During a second phone call while CHS-1 was en route to [SUBJECT BUSINESS], KENNEDY told CHS-1 to "just keep driving until you see my Cadillac". CHS-1 went to the 151 A STREET LOOP #7 as directed and purchased 7 grams of crack cocaine from KENNEDY. During that contact, KENNEDY told CHS-1 that he did mechanic work, then corrected himself that he didn't do the work, "I just pay them", indicating towards other persons observed present at the shop working on vehicles. During this initial deal, CHS-1 asked about getting "14" instead of the original "7", and KENNEDY said, "I don't ride like that", and corrected CHS-1 to use language like "14th Street" and "7th Avenue", as well as telling CHS[-1] to get away from his camera. Based on my training and experience this slang is meaning 7 and 14 grams of crack cocaine, as slang is commonly used to describe controlled substances, and the direction of CHS-1 away from the camera view was an effort to avoid recording an illegal transaction. Also, during the deal, CHS-1 asked KENNEDY if ERICA (ELISOFF) was "making" KENNEDY get (drugs) from her instead of KENNEDY, and KENNEDY responded in part, "It don't matter . . . she ain't gonna make me do shit . . . I prefer you do it up here for bigger . . . either or it don't make no difference, you go see her or you go see me." KENNEDY then confirmed $450 and told CHS-1 that he would call CHS-1 "for the rest". After CHS-I left the [SUBJECT BUSINESS], surveillance observed KENNEDY drive . . . from [SUBJECT BUSINESS] to SUBJECT APARTMENT 3. KENNEDY was observed entering SUBJECT APARTMENT 3. During a subsequent monitored phone call KENNEDY directed CHS-1 to his "home", and "just call and I'll bring it out to you." When CHS-1 arrived another phone call was placed from CHS-1 to KENNEDY where CHS-1 told KENNEDY CHS-1 was outside. Surveillance observed KENNEDY exit SUBJECT APARTMENT 3 and go to the passenger side of CHS-1's vehicle, where KENNEDY exchanged a Newport cigarette pack containing a bindle of suspected crack cocaine for $450 and could be heard saying that it was "in the cigarette" pack. The suspected crack cocaine was seized by TFO MCMILLAN from CHS-1 immediately after the deal and weighed at approximately 7.2 grams each, for a total of 14.4 grams with original cellophane packaging, and field tested presumptively positive for cocaine.

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
4

Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 4 of 14

30. On December 21, 2021, CHS-1 was utilized to purchase approximately 21 grams of crack cocaine from ELISOFF in Anchorage, Alaska. This deal occurred in the kitchen area of SUBJECT APARTMENT 4. The deal was preceded by a phone call between CHS-1 and ELISOFF that was monitored and recorded by law enforcement, where ELISOFF agreed to "7" and "14". The deal was monitored, and audio recorded by law enforcement. After the deal, KENNEDY was observed leaving the apartment complex . . . and [driving] to [SUBJECT BUSINESS]. The suspected crack cocaine was seized by TFO MCMILLAN from CHS-1 immediately after the deal and weighed at approximately 8.0 grams and 14.9 each, for a total of 22.9 grams with original cellophane packaging, and field tested presumptively positive for cocaine.[14]

On May 14, 2022, a magistrate judge issued the requested search warrants, which were executed on May 24, 2022.[15] Defendants were subsequently indicted on charges of cocaine distribution, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[16]

## II. LEGAL STANDARD

The Fourth Amendment prohibits unreasonable searches and seizures by the government.[17] Where a search warrant is required to satisfy this standard, the warrant "must be supported by an affidavit establishing probable cause."[18] Probable cause to issue a search warrant exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances."[19] "Neither certainty nor a preponderance of the evidence is required."[20] In determining whether probable cause exists, the issuing magistrate judge "may rely on the training and experience of affiant police officers."[21]

---

[14] *Id.* at 11–16, ¶¶ 25–26, 28–30.
[15] *See* Docket 2 at 2.
[16] *Id.* The Indictment also contains a criminal forfeiture allegation pursuant to 21 U.S.C. § 853. *Id.* at 3.
[17] U.S. Const. amend. IV.
[18] *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013) (internal quotation marks omitted).
[19] *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (explaining that probable cause decision is based on "all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information").
[20] *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal citations and quotations omitted).
[21] *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *see also United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (stating that issuing magistrate judge may rely on conclusions of experienced officers regarding where evidence of a crime is likely to be found).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
5
Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 5 of 14

"[T]he duty of a reviewing court is simply to ensure that the magistrate [judge] had a 'substantial basis for . . . conclud[ing]' that probable cause existed."[22] A reviewing court may not "flyspeck the affidavit through de novo review," and must give "great deference" to the issuing magistrate judge's decision.[23] The "resolution of doubtful or marginal cases . . . should largely be determined by the preference accorded to warrants."[24]

If a reviewing court determines that a search warrant lacked probable cause, evidence obtained during the warrant's execution "should generally be suppressed under the exclusionary rule."[25] Suppression is not an appropriate remedy, however, where an exception to the exclusionary rule applies.[26] One such exception is the "good faith" exception, which requires the government to show that an officer acted "in objectively reasonable reliance" on the warrant.[27] The supporting affidavit "'must establish at least a colorable argument for probable cause' for th[is] exception to apply."[28]

### III. DISCUSSION

Defendant Kennedy moves to suppress all evidence obtained from the execution of the search warrants at the Subject Locations.[29] He contends that the affidavits in support of the warrants did not establish probable cause because they rested on stale information.[30] The government responds that suppression is not appropriate because the disputed information was not stale and the affidavits established probable cause to search the Subject Locations for evidence of drug offenses.[31] Moreover, the government maintains, even if the affidavits lacked

---

[22] *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980)).
[23] *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006); *see also United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) ("A magistrate judge's finding of probable cause is entitled to great deference.").
[24] *Kelley*, 482 F.3d at 1050–51 (internal quotation marks omitted) (quoting *Gates*, 462 U.S. at 237 n.10).
[25] *United States v. Underwood*, 725 F.3d 1076, 1084–85 (9th Cir. 2013).
[26] *See id.* at 1085.
[27] *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).
[28] *Crews*, 502 F.3d at 1136 (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)).
[29] Docket 98.
[30] *Id.* at 5–6.
[31] Docket 101 at 4–7.

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
6
Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 6 of 14

probable cause, the good faith exception would prohibit suppression of the evidence seized.[32]

Defendant Elisoff requests joinder in the Motion to Suppress.[33] "[A] criminal defendant may invoke the protections of the Fourth Amendment only if [s]he can show that [s]he had a legitimate expectation of privacy in the place searched or the item seized."[34] To make such a showing, the defendant must demonstrate both (1) a subjective expectation of privacy and (2) an objectively reasonable expectation of privacy.[35] Although Defendant Elisoff's Motion for Joinder fails to articulate any argument as to her standing to challenge the searches of the Subject Locations,[36] TFO McMillan's affidavits demonstrate that Defendant Elisoff lived in or had control over Subject Apartments 3 and 4 and thus had a legitimate expectation of privacy in those locations.[37] No evidence in the record, however, indicates that Defendant Elisoff had a legitimate expectation of privacy in the Subject Business.[38] Therefore, the Court grants the Motion for Joinder only with respect to the arguments for suppression of evidence seized from the searches of Subject Apartments 3 and 4.

The Court now turns to the arguments raised in the parties' briefing on the Motion to Suppress.

### A. The Affidavits Established Probable Cause to Search the Subject Locations for Evidence of Drug Trafficking Offenses.

---

[32] *Id.* at 7–8.
[33] Docket 105.
[34] *United States v. Motley*, 89 F.4th 777, 784 (9th Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007)).
[35] *Id.* (quoting *Ziegler*, 474 F.3d at 1189).
[36] *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that h[er] own Fourth Amendment rights were violated by the challenged search or seizure."); L. Crim. R. 47.1(b)(3)–(4) ("A motion is initiated by the filing of a document that includes . . . a brief statement of the relevant facts, including, for motions made pursuant to the Fourth Amendment, how the moving party has met (or expects to meet) its burden of establishing a reasonable expectation of privacy in the place or object searched; . . . [and a] statement of the legal authorities relied upon[.]").
[37] *See Rakas*, 439 U.S. at 430 n.12 ("[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy . . . .").
[38] *Cf. United States v. Bowie*, 726 Fed. App'x 625, 626 (9th Cir. 2018) (observing that defendant had "done little" to show that he had a legitimate expectation of privacy in his girlfriend's car girlfriend's car where he did not submit an affidavit or testify at suppression hearing, and record indicated that defendant was a mere passenger in the car).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
7

Case 3:23-cr-00006-SLG-KFR    Document 115    Filed 08/14/24    Page 7 of 14

In arguing that the search warrants lacked probable cause, Defendants focus exclusively on the three drug sales detailed in the affidavits. Defendants asserts that the fact that these "isolated" sales took place is stale because the sales occurred between about five and nine months before law enforcement sought the search warrants.[39]

The government maintains that the affidavits provided a sufficient basis to believe that evidence of drug trafficking would be found at the Subject Locations because they showed that Defendants "were in a relationship and aided each other in their distribution operation[,]" and because this operation had sold drugs to CHS-1 on a "regular basis" prior to the final documented sale in December 2022.[40] The government disputes that information regarding the three drug sales is stale, arguing that the number of months that passed between the three sales and law enforcement's application for the search warrants is not dispositive due to the continuing nature of the criminal activity in question and the fact that the "documentary records [of drug trafficking] sought [in the warrants] are the type of records typically found to be maintained over a long period of time."[41]

In reply, Defendants assert that the affidavits' contents regarding their relationship and law enforcement's monitoring and surveillance in connection with the three drug sales "do not overcome the staleness of the information on which the warrants were based."[42] Defendants suggest that, instead, the affidavit's lack of information as to any more recent criminal activity renders stale the information about the three drug sales.[43]

"Information underlying a warrant is not stale 'if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'"[44] "The mere lapse of substantial amounts of time is not controlling in a question of staleness."[45] Instead, a court "evaluate[s] staleness in light of the particular facts of the case

---

[39] Docket 98 at 5–6.
[40] Docket 101 at 6–7.
[41] *Id.*
[42] Docket 104 at 3.
[43] *Id.* at 1–3.
[44] *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (quoting *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997)).
[45] *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
8
Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 8 of 14

and the nature of the criminal activity and property sought."[46] "[W]hen the evidence sought is of an ongoing criminal business[,] . . . greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time."[47]

Drug trafficking is a classic example of an "ongoing criminal business" with flexible temporal requirements when determining whether information in an affidavit is stale. "In cases involving ongoing narcotics businesses, lapses of several months—and up to two years in certain circumstances—are not sufficient to render the information in an affidavit too stale to support probable cause."[48] For example, in *United States v. Pitts*, the Ninth Circuit concluded that information about the defendant's drug trafficking was not stale where the most recent evidence of the offense was a single cocaine sale the defendant made approximately four months before law enforcement sought a search warrant.[49] The affidavit described this single cocaine sale and further indicated that the defendant was a "regular supplier" of drugs to another individual.[50] Considered together, the court held, this information "support[ed] the inference that [the defendant] was more than a one-time drug seller" and there was thus no staleness issue.[51]

Here, similarly, the Court finds that the five- and nine-month lapses following the August and December 2021 drug sales, respectively, did not make the information about those transactions stale. The information in the affidavits adequately substantiated TFO McMillan's belief that Defendants had been working together to distribute drugs and that evidence of their operation's activities was likely to be found at the Subject Locations. Specifically, the affidavits

---

[46] *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991)).

[47] *Id.* (second alteration in original) (quoting *Greany*, 929 F.2d at 525).

[48] *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005); *see also United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity."); *United States v. Foster*, 711 F.2d 871, 879 (9th Cir. 1983) (concluding that information supporting search of defendant's residence for evidence of drug trafficking was not stale where affidavit detailed a 15-month-old drug sale at defendant's residence and a 3-month-old drug sale "linked" to defendant), *cert. denied*, 465 U.S. 1103 (1984).

[49] 6 F.3d at 1368–70.

[50] *Id.* at 1370.

[51] *Id.*

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
9

contained information that: (1) Defendants were in a long-term domestic relationship and lived together at both Subject Apartments;[52] (2) Defendant Kennedy sold drugs to CHS-1 on two occasions during the investigation, with the first of those transactions occurring in Subject Apartment 3, and part of the second one taking place at the Subject Business;[53] (3) Defendant Elisoff sold drugs to CHS-1 on one occasion during the investigation from Subject Apartment 4;[54] (4) Defendant Kennedy drove from the Subject Apartments to the Subject Business after both his first transaction and Defendant Elisoff's sole transaction;[55] (5) Defendant Kennedy said during one of his transactions that it did not matter to him whether CHS-1 purchased drugs from Defendant Elisoff as opposed to Defendant Kennedy;[56] (6) Defendant Kennedy implied that he had been distributing cocaine prior to August 2021 during the height of the COVID-19 pandemic;[57] and (7) Defendant Kennedy displayed familiarity with CHS-1's usual drug order.[58] In addition, the affidavits described how, in TFO McMillan's experience, drug distribution is "frequently a continuing activity over months and years" and those involved in drug distribution tend to maintain associated records, equipment, and supplies over long periods of time.[59]

In this context, the information concerning the three drug sales did not need to be refreshed by more recent information indicating that Defendants were still engaged in drug

---

[52] Docket 98-1 at 19–20, ¶¶ 25–26.
[53] *Id.* at 21–23, ¶¶ 28–29.
[54] *Id.* at 23–24, ¶ 30.
[55] *Id.* at 21, 23, ¶¶ 28, 30.
[56] *Id.* at 22, ¶ 29 ("KENNEDY responded in part, 'It don't matter . . . [Elisoff] ain't gonna make me do shit . . . I prefer you do it up here for bigger . . . either or it don't make no difference, you go see her or you go see me.'").
[57] *Id.* at 21, ¶ 28 ("KENNEDY could be heard discussing 'pandemic' prices, implying that he was charging different prices during the COVID pandemic, which started in early 2020. KENNEDY said that during the pandemic, '14 was 14'.").
[58] *Id.* ("KENNEDY told CHS-1 to come to his residence when CHS-1 asked to "come see you for "the same thing I always get.").
[59] *Id.* at 11–12, 14, ¶¶ 4–6, 11; *see also Foster*, 711 F.2d at 878 (stating that search warrant affiant's opinion that evidence of defendants' drug dealings would be found at defendants' residences, based on affiant's experience as a narcotics agent, was "an important factor to be considered" in the magistrate judge's probable cause determination).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
10

Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 10 of 14

trafficking.[60] The Court may properly rely on the continuing pattern of drug distribution described in this case and TFO McMillan's experience as "'good reasons [to conclude] that the items to be seized are still [at the Subject Locations].'"[61] More recent information would only further bolster this conclusion.[62]

Accordingly, the Court finds that the sum of the information in the affidavits established probable cause to believe that Defendants had a continuing drug trafficking operation and that evidence of their operation's activities were still likely to be found at the Subject Locations.[63]

### B. Even if the Affidavits Lacked Probable Cause, the Good Faith Exception Would Apply.

Even if the supporting affidavits did not establish probable cause, the good faith exception to the exclusionary rule would justify suppression of the evidence obtained from the searches. The good faith exception applies "if an officer acts 'in objectively reasonable reliance'

---

[60] *Cf. United States v. Abercrombie*, No. CR21-117RSM, 2022 WL 1171368, at *2 (W.D. Wash. Apr. 20, 2022) (determining that information from two recorded calls made nine months before search for evidence of drug trafficking was not stale where affidavit "presented evidence connecting [defendant] to a years-long drug trafficking conspiracy" and where the two calls "implied an ongoing relationship, as they demonstrated longstanding familiarity and referenced drug trafficking both in the past and in the future").

[61] *Schesso*, 730 F.3d at 1047 (quoting *Lacy*, 119 F.3d at 745–46).

[62] Defendants attempt to draw a distinction between this case and *Andresen v. Maryland*, where the Supreme Court rejected a staleness argument where there was a three-month delay between the completion of an attorney's fraudulent real estate transactions on which the search warrants at issue were based, and the ensuing searches for evidence of fraud. Docket 98 at 5–6; 427 U.S. 463, 478 n.9 (1976). The Supreme Court observed that the affidavits contained information that, three weeks prior to the searches, the attorney had acted in a way that corroborated the fraud allegations in connection with a property at the center of the investigation. 427 U.S. at 478 n.9. However, this more recent information was not essential to the Supreme Court's determination that there was sufficient reason to believe that the transactions "w[ere] still a current concern" of the attorney and that the attorney thus retained the sought-after records in his offices. *See id.* Contrary to Defendants' suggestion, *Andresen* supports the notion that more recent information pertaining to Defendants' drug trafficking was not necessary in light of the information establishing that evidence of Defendants' operation was still likely to be found at the Subject Locations.

[63] Defendants do not appear to dispute that the affidavits demonstrated a sufficient nexus between the criminal activity or evidence and the Subject Locations. But to the extent that Defendants attempt to argue that the information pertaining to each Subject Location was limited only to the sale(s) conducted at the respective site, the Court disagrees. As discussed above, the affidavits provided adequate support for the belief that Defendants worked together to distribute drugs and that all Subject Locations were part of their joint operation.

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR
11

on the warrant."[64] The exception does not apply, conversely, "if the officers' conduct showed 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'"[65] "The central question is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate[] [judge's] authorization.'"[66]

In *United States v. Leon*, the Supreme Court identified four situations that *per se* fail to satisfy the good faith exception.[67] These situations are: (1) where the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge "wholly abandon[s] [their] judicial role"; (3) where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."[68] The Court agrees with the government that none of these situations are present here.[69]

Moreover, as the above discussion demonstrates, a reasonably well-trained officer would not have had reason to question the legality of the searches of the Subject Locations for evidence of drug trafficking. The same reasons supporting the Court's conclusion that there was probable cause for the searches necessarily support the conclusion that the affidavits provided a "colorable argument for probable cause,"[70] and that the officers who executed the warrants were entitled to rely on the magistrate judge's issuance of the warrants.[71] Therefore,

---

[64] *Underwood*, 725 F.3d at 1085 (quoting *Leon*, 468 U.S. at 922); *see also Luong*, 470 F.3d at 902 ("[T]he good faith test is an objective one.").
[65] *United States v. King*, 985 F.3d 702, 710 (9th Cir. 2021) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).
[66] *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).
[67] 468 U.S. at 922–23.
[68] *Id.*
[69] *See* Docket 101 at 7.
[70] *See Crews*, 502 F.3d at 1136 (internal quotation marks and citation omitted); *see also Underwood*, 725 F.3d at 1085 ("A colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist." (quoting *United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988))).
[71] *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("[I]n the ordinary case, an officer cannot be expected to question the magistrate[] [judge's] probable-cause determination." (internal quotation marks omitted) (quoting *Leon*, 468 U.S. at 921)). As the government's briefing focused exclusively on

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR

12

Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 12 of 14

the Court finds that the good faith exception provides an alternative ground for denying the Motion to Suppress.

## IV. CONCLUSION

In sum, the Court orders and recommends as follows:

- Defendant Elisoff's Motion for Joinder at Docket 105 is **GRANTED in part and DENIED in part** because Defendant Elisoff appears to have standing to challenge only the searches of the Subject Apartments.
- Defendants' request for an evidentiary hearing is **DENIED** because the Motion to Suppress raises no factual disputes.
- Defendants' Motion to Suppress at Docket 98 should be **DENIED** because the affidavits supporting the search warrants for the Subject Locations demonstrated probable cause that drug trafficking evidence would be found at each of these sites.

DATED this 14th day of August, 2024, at Anchorage, Alaska.



/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[72]

---

whether the two search warrants were supported by probable cause, the Court rejects Defendants' argument that the government has failed to meet its burden of proving that the good faith exception applies. *See* Docket 104 at 3–4; *cf. United States v. Artis*, 919 F.3d 1123, 1134 (9th Cir. 2019) (holding that government failed to carry its burden of showing that good faith exception applied where it "made no effort to defend the legality of the search that yielded the evidence in question").

[72] 28 U.S.C. § 636(b)(1)(B).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR

13

Case 3:23-cr-00006-SLG-KFR    Document 115    Filed 08/14/24    Page 13 of 14

A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[73]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[74] A response to the objections may be filed within seven (7) days after any objection is filed.[75] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[76]

---

[73] *Id.* § 636(b)(1)(C).
[74] *Id.*; L.M.J.R. 7(a)(1).
[75] L.M.J.R. 7(a)(2).
[76] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

R&R re Motion to Suppress
*United States v. Kennedy, et al.*
3:23-cr-00006-SLG-KFR

14

Case 3:23-cr-00006-SLG-KFR   Document 115   Filed 08/14/24   Page 14 of 14